## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**ASHLEY CARTER,**

    **Plaintiff,**

**v.**                               **CASE NO:**

**SARASOTA MEMORIAL HOSPITAL,**

    **Defendant.**

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, ASHLEY CARTER, (hereinafter "Plaintiff" or "Ms. Carter"), a Florida resident, by and through the undersigned counsel, hereby sues Defendant, SARASOTA MEMORIAL HOSPITAL (hereinafter "Defendant," or "the Hospital") and alleges:

## INTRODUCTION

1.    The Plaintiff brings this action against Defendant, her former employer, seeking to recover damages for unlawful discrimination based on race and gender as well as retaliation in violation of her rights under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII") and its implementing Regulations.

2.    As further set forth below, Plaintiff alleges that Defendant unlawfully discriminated against her, altered the terms, conditions, and privileges of her employment because of her race and gender, and retaliated against her in violation of her rights under Title VII.

3.    As a direct and proximate result of unlawful actions, Plaintiff has suffered actual damages including, but not limited to loss of income, loss of opportunity for future income, loss of benefits, and loss of future pay increases. In addition, she has suffered and continues to suffer the loss of her professional and personal reputation, emotional distress, mental anguish, embarrassment, and humiliation.

4.    Plaintiff has incurred costs and attorney's fees in bringing this matter.

## JURISDICTION AND VENUE

5.    This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1343 and 42 U.S.C. § 2000e-5.

6.    This Court has jurisdiction to grant declaratory relief, declare the rights and legal relations of the parties, and order further relief pursuant to 28 U.S.C. §§ 2201 and 2202.

7.    Venue is proper in the United States District Court for the

Middle District of Florida, Tampa Division, pursuant to 28 U.S.C. §§ 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims herein occurred within this District and Division and pursuant to 42 U.S.C. § 2000e-5(f)(3) because the unlawful employment practices out of which Plaintiff's claims herein arise were committed within this District and Division. All facts and circumstances arising from this dispute took place in Sarasota County, Florida.

## PARTIES

8.    Plaintiff is a 33-year-old Black female.

9.    Plaintiff is a member of a class protected against discrimination and retaliation based on her race and gender under Title VII.

10.    During the period from July 8, 2024, until July 29, 2025, Defendant employed Plaintiff as a Cardiovascular Operating Room (CVOR) Registered Nurse.

11.    At all times material herein, Plaintiff met the definitions of "employee" and "eligible employee" under all applicable federal and state statutes.

12.    At all times material herein, Plaintiff was an employee entitled to protection as defined by Title VII.

13.     The Defendant, SARASOTA MEMORIAL HOSPITAL, is a hospital with a principal place of business located at 1700 S Tamiami Trail, Sarasota, FL 34239.

14.     At all times material herein, Defendant regularly conducted, and continues to conduct, business throughout Sarasota County, Florida.

15.     At all times material herein, Defendant met, and continues to meet, the definition of "employer" under all applicable federal and state statutes including, but not limited to, Title VII.

16.     Accordingly, Defendant is liable under Title VII for the unlawful discrimination and retaliation to which it subjected Plaintiff.

## ADMINISTRATIVE PREREQUISITES

17.     Plaintiff has properly exhausted all administrative prerequisites prior to filing the instant lawsuit.

18.     On November 18, 2025, Plaintiff timely dual filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC") and the Florida Commission on Human Relations ("FCHR") against Defendant alleging, among other things, race and sex discrimination as well as retaliation.

19.     On December 2, 2025, the EEOC issued Plaintiff a Notice of Right

to Sue in reference to her Charge of Discrimination (EEOC Charge No. 511-2026-00751) against Defendant.

20.    All conditions precedent to bringing this action have been performed or have occurred.

## GENERAL ALLEGATIONS

21.    On July 8, 2024, Plaintiff began her employment with Defendant as a Cardiovascular Operating Room (CVOR) Registered Nurse in the CVOR department.

22.    Plaintiff held a Bachelor of Science in Nursing from Dyouville University (2022) and had extensive prior nursing experience, including as an LPN since 2015 and previous employment at Buffalo General Medical Center and HCA Florida Blake.

23.    During her employment with Defendant, Plaintiff worked under the supervision of various personnel including Caroline Piekos (her preceptor during a 3-month orientation period), Operating Room Manager Jennifer Prinkey, Department Manager Rebecca Feeley, and Assistant Operating Room Manager Abigail Stevenson.

24.    From the outset of her employment, Plaintiff was subjected to discriminatory treatment based on her race by Caroline Piekos, who served

as Plaintiff's preceptor during her initial three-month orientation period.

25.    Caroline Piekos routinely and systematically questioned Plaintiff's professional decisions and actions in front of surgeons and other staff members in a manner that was racially motivated and designed to undermine Plaintiff's credibility and competence.

26.    Caroline Piekos openly criticized Plaintiff's work performance to make her appear incompetent during critical surgical situations, subjecting Plaintiff to humiliation and professional embarrassment in front of colleagues and medical staff.

27.    Caroline Piekos made racially charged comments about Plaintiff's physical appearance, particularly targeting Plaintiff's hair with invasive and inappropriate questions about how she styled her curly hair, including confronting Plaintiff about her hair in the locker room.

28.    In addition to race-based discrimination, Caroline Piekos subjected Plaintiff to gender discrimination based on her status as a single mother, making invasive and demeaning remarks including asking Plaintiff: "where are the father of your kids? Does he ever help you out? How are you able to do this job? why weren't you married to your sons father?"

29.    These comments by Caroline Piekos were designed to imply that

Plaintiff was less reliable and less committed to her profession because of her family responsibilities as a single mother.

30.    The discriminatory treatment by Caroline Piekos created a hostile work environment for Plaintiff, with daily harassment that interfered with her ability to perform her job duties effectively.

31.    Other coworkers, including Janet Fisher, Abigail Stevenson, Chloe Segatto, Ashlie Elliot, Angela, Lynne Rossi, Camille Buchanan, Kenneth Go, and Rainer, witnessed various aspects of the discriminatory treatment to which Plaintiff was subjected.

32.    On May 14, 2025, Plaintiff, visibly upset and crying due to the ongoing harassment and discrimination, filed a formal complaint with Operating Room Manager Jennifer Prinkey about Caroline Piekos' discriminatory conduct.

33.    During this complaint meeting, surgical technologist Janet Fisher was present as a witness to Plaintiff's complaint and emotional distress.

34.    Jennifer Prinkey's response to Plaintiff's complaint was wholly inadequate, as she merely wrote statements on a small notepad rather than filing a formal complaint in the computer system as required by proper

procedure.

35.    No investigation was conducted into Plaintiff's allegations of discrimination and harassment despite the serious nature of her complaints.

36.    Other coworkers warned Plaintiff that Caroline Piekos had a close relationship with management and that previous employees who had filed complaints against Caroline Piekos had been terminated shortly thereafter.

37.    Due to the hostile work environment created by Caroline Piekos' discriminatory conduct, Plaintiff made two separate requests to transfer out of the CVOR department to other positions within Defendant's organization.

38.    Both of Plaintiff's transfer requests were denied by Department Manager Rebecca Feeley, despite Plaintiff being qualified for available positions, including a General Surgery position.

39.    Plaintiff received a positive annual performance review in July 2025 from Assistant Operating Room Manager Abigail Stevenson, demonstrating that her work performance was satisfactory and that she had no prior disciplinary actions.

40.    On July 29, 2025, Plaintiff was terminated by Rebecca Feeley and Jennifer Prinkey under false pretenses, with Defendant alleging that Plaintiff

had been "sleeping on the job" for 4-5 hours in an empty operating room when no surgeries were scheduled.

41.    Plaintiff vehemently denied these allegations and requested proof or evidence to support Defendant's claims, but Defendant refused to provide any evidence and characterized the alleged conduct as "egregious."

42.    Defendant failed to follow proper progressive disciplinary procedures and provided Plaintiff with no written warnings prior to her termination.

43.    Human Resources was not present during Plaintiff's termination meeting, in violation of proper termination procedures.

44.    Plaintiff refused to sign termination documents that would have required her to admit fault for misconduct she did not commit.

45.    Plaintiff's termination was retaliatory and in direct response to her complaint about Caroline Piekos' discriminatory conduct filed on May 14, 2025.

46.    On August 6, 2025, approximately one week after Plaintiff's termination, Plaintiff obtained photographic evidence of Caroline Piekos sleeping on the job during an active open heart surgery while patient alarms were sounding.

47.    Plaintiff reported this photographic evidence to Caroline Piekos herself, Rebecca Feeley, and the HR general email, providing clear documentation of the same conduct for which Plaintiff had allegedly been terminated.

48.    The only response Plaintiff received from HR regarding this report was a brief statement indicating they were "forwarding for assistance."

49.    Despite this clear evidence of Caroline Piekos engaging in the same conduct for which Plaintiff was terminated, Caroline Piekos remains employed with Defendant and has not been disciplined in any manner.

50.    Upon information and belief, other non-Black colleagues frequently sleep on the job without facing any disciplinary action, demonstrating a clear pattern of disparate treatment based on race.

51.    Plaintiff's termination resulted in immediate and ongoing damages, including loss of income, loss of health insurance benefits, and damage to her professional reputation.

52.    Due to the discriminatory treatment and wrongful termination, Plaintiff has suffered significant emotional distress, including being diagnosed with Bipolar disorder type 1 and severe anxiety, for which she

receives treatment from Camille Makham, Psychiatric Nurse Practitioner at Elite DNA.

53.    Plaintiff also developed uncontrolled blood pressure as a result of the stress and emotional trauma caused by Defendant's discriminatory conduct.

54.    Following her termination, Plaintiff secured employment at Lakewood Ranch Medical Center as a General Surgery Nurse starting August 12, 2025, but at a reduced hourly wage of $45.00 per hour, representing a significant pay cut from her previous position.

## COUNT I
## VIOLATIONS OF TITLE VII OF THE CIVIL RIGHTS ACT
### Race Discrimination
### (Disparate Treatment/Termination)

55.    Plaintiff alleges, realleges, and incorporates by reference all allegations set forth in each of the preceding Paragraphs 1 through 54 of this Complaint as though fully set forth herein.

56.    Plaintiff is a member of a protected class (Black/African American).

57.    Plaintiff was qualified for her position and performed her job satisfactorily, as reflected by her positive annual performance review in July

2025 and the absence of progressive discipline prior to termination.

58.     Defendant subjected Plaintiff to an adverse employment action, including termination on July 29, 2025.

59.     Defendant treated similarly situated non-Black employees more favorably, including permitting Caroline Piekos (a non-Black employee) to remain employed despite documented evidence of substantially similar misconduct (sleeping on the job), and, upon information and belief, permitting other non-Black colleagues to sleep on the job without discipline.

60.     Defendant's stated reason for termination was pretextual.

61.     Defendant discriminated against Plaintiff based on race in violation of Title VII.

**WHEREFORE**, the Plaintiff, ASHLEY CARTER, requests trial by jury of all issues so triable as of right, demands judgment against the Defendant, SARASOTA MEMORIAL HOSPITAL, and in favor of Plaintiff, and respectfully requests that this Court grant the following relief:

A.     Grant judgment in favor of Plaintiff and declare that Defendant has violated Title VII of the Civil Rights Act, as amended, and its implementing Regulations, discriminating against Plaintiff based on her race;

B.   Award sufficient remedial relief to make Plaintiff whole for the individual loss that she has suffered because of the discrimination to which Defendant subjected her, including, but not limited to, front pay in lieu of reinstatement, full backpay with interest, and any other appropriate nondiscriminatory measures to overcome the effects of the discrimination she has endured;

C.   Award compensatory damages to Plaintiff in an amount that will fully, justly, and reasonably compensate Plaintiff for the nature, extent, and duration of the damages caused by Defendant's discriminatory conduct and actions pursuant to Title VII;

D.   Award Plaintiff all other damages available under Title VII, including, but not limited to, the damages set forth above and other economic losses proximately caused and allowable under Title VII, according to proof;

E.   Award Plaintiff pre- and post-judgment interest calculated at the prevailing rate, as provided by law;

F.   Award Plaintiff her attorneys' fees, reasonable expert witness

fees, and the costs of this action; and

G.    Grant such other and further relief as this Court may deem

equitable, just, and proper.

<u>COUNT II</u>
**VIOLATIONS OF TITLE VII OF THE CIVIL RIGHTS ACT**
**Sex Discrimination**
**(Disparate Treatment/Termination)**

62.    Plaintiff alleges, realleges, and incorporates by reference all allegations set forth in each of the preceding Paragraphs 1 through 54 of this Complaint as though fully set forth herein.

63.    Plaintiff was qualified for her position and performed her job satisfactorily, as reflected by her positive annual performance review in July 2025 and the absence of progressive discipline prior to termination.

64.    Defendant subjected Plaintiff to an adverse employment action, including termination on July 29, 2025.

65.    Defendant's adverse actions were motivated, at least in part, by Plaintiff's sex, including sex stereotyping and discriminatory animus tied to Plaintiff's status as a single mother.

66.    Defendant's stated reason for termination was pretextual.

67.    Defendant discriminated against Plaintiff based on sex in

violation of Title VII.

**WHEREFORE**, the Plaintiff, ASHLEY CARTER, requests trial by jury of all issues so triable as of right, demands judgment against the Defendant, SARASOTA MEMORIAL HOSPITAL, and in favor of Plaintiff, and respectfully requests that this Court grant the following relief:

A.   Grant judgment in favor of Plaintiff and declare that Defendant has violated Title VII of the Civil Rights Act, as amended, and its implementing Regulations, discriminating against Plaintiff based on her sex;

B.   Award sufficient remedial relief to make Plaintiff whole for the individual loss that she has suffered because of the discrimination to which Defendant subjected her, including, but not limited to, front pay in lieu of reinstatement, full backpay with interest, and any other appropriate nondiscriminatory measures to overcome the effects of the discrimination she has endured;

C.   Award compensatory damages to Plaintiff in an amount that will fully, justly, and reasonably compensate Plaintiff for the nature, extent, and duration of the damages caused by

Defendant's discriminatory conduct and actions pursuant to Title VII;

D.    Award Plaintiff all other damages available under Title VII, including, but not limited to, the damages set forth above and other economic losses proximately caused and allowable under Title VII, according to proof;

E.    Award Plaintiff pre- and post-judgment interest calculated at the prevailing rate, as provided by law;

F.    Award Plaintiff her attorneys' fees, reasonable expert witness fees, and the costs of this action; and

G.    Grant such other and further relief as this Court may deem equitable, just, and proper.

## COUNT III
### VIOLATIONS OF TITLE VII OF THE CIVIL RIGHTS ACT
### Hostile Work Environment
### (Race)

68.    Plaintiff alleges, realleges, and incorporates by reference all allegations set forth in each of the preceding Paragraphs 1 through 54 of this Complaint as though fully set forth herein.

69.    Plaintiff is a member of a protected class (Black/African

American).

70.    Plaintiff was subjected to unwelcome harassment based on race, including racially charged comments and conduct targeting Plaintiff's physical appearance (including her hair), and racially motivated undermining and humiliation in front of surgeons and staff.

71.    The harassment was sufficiently severe or pervasive to alter the terms and conditions of Plaintiff's employment and create an abusive working environment, including daily harassment that interfered with Plaintiff's ability to perform her job duties effectively.

72.    The harassment was both subjectively and objectively hostile or abusive.

73.    Defendant knew or should have known of the race-based harassment, including through Plaintiff's formal complaint to Operating Room Manager Jennifer Prinkey on May 14, 2025.

74.    Defendant failed to take prompt remedial action reasonably calculated to end the harassment, including failing to investigate despite the serious nature of the allegations.

75.    As a direct and proximate result of Defendant's unlawful conduct, Plaintiff suffered damages.

76.    Defendant violated Title VII by subjecting Plaintiff to a racially hostile work environment.

**WHEREFORE**, the Plaintiff, ASHLEY CARTER, requests trial by jury of all issues so triable as of right, demands judgment against the Defendant, SARASOTA MEMORIAL HOSPITAL, and in favor of Plaintiff, and respectfully requests that this Court grant the following relief:

A.    Grant judgment in favor of Plaintiff and declare that Defendant has violated Title VII of the Civil Rights Act, as amended, and its implementing Regulations, discriminating against Plaintiff based on her race;

B.    Award sufficient remedial relief to make Plaintiff whole for the individual loss that she has suffered because of the discrimination to which Defendant subjected her, including, but not limited to, front pay in lieu of reinstatement, full backpay with interest, and any other appropriate nondiscriminatory measures to overcome the effects of the discrimination she has endured;

C.    Award compensatory damages to Plaintiff in an amount that will fully, justly, and reasonably compensate Plaintiff for the

nature, extent, and duration of the damages caused by Defendant's discriminatory conduct and actions pursuant to Title VII;

D.     Award Plaintiff all other damages available under Title VII, including, but not limited to, the damages set forth above and other economic losses proximately caused and allowable under Title VII, according to proof;

E.     Award Plaintiff pre- and post-judgment interest calculated at the prevailing rate, as provided by law;

F.     Award Plaintiff her attorneys' fees, reasonable expert witness fees, and the costs of this action; and

G.     Grant such other and further relief as this Court may deem equitable, just, and proper.

## COUNT IV
## VIOLATIONS OF TITLE VII OF THE CIVIL RIGHTS ACT
## Hostile Work Environment
## (Sex)

77.    Plaintiff alleges, realleges, and incorporates by reference all allegations set forth in each of the preceding Paragraphs 1 through 54 of this Complaint as though fully set forth herein.

78.    Plaintiff is a member of a protected class (female).

79.    Plaintiff was subjected to unwelcome harassment based on sex, including demeaning and invasive remarks rooted in sex stereotyping and discriminatory animus directed at Plaintiff's status as a single mother.

80.    The harassment was sufficiently severe or pervasive to alter the terms and conditions of Plaintiff's employment and create an abusive working environment, including daily harassment that interfered with Plaintiff's ability to perform her job duties effectively.

81.    The harassment was both subjectively and objectively hostile or abusive.

82.    Defendant knew or should have known of the sex-based harassment, including through Plaintiff's formal complaint to Operating Room Manager Jennifer Prinkey on May 14, 2025.

83.    Defendant failed to take prompt remedial action reasonably calculated to end the harassment, including failing to conduct an investigation despite the serious nature of the allegations.

84.    As a direct and proximate result of Defendant's unlawful conduct, Plaintiff suffered damages.

85.    Defendant violated Title VII by subjecting Plaintiff to a sexually

hostile work environment.

**WHEREFORE**, the Plaintiff, ASHLEY CARTER, requests trial by jury of all issues so triable as of right, demands judgment against the Defendant, SARASOTA MEMORIAL HOSPITAL, and in favor of Plaintiff, and respectfully requests that this Court grant the following relief:

A.    Grant judgment in favor of Plaintiff and declare that Defendant has violated Title VII of the Civil Rights Act, as amended, and its implementing Regulations, discriminating against Plaintiff based on her sex;

B.    Award sufficient remedial relief to make Plaintiff whole for the individual loss that she has suffered because of the discrimination to which Defendant subjected her, including, but not limited to, front pay in lieu of reinstatement, full backpay with interest, and any other appropriate nondiscriminatory measures to overcome the effects of the discrimination she has endured;

C.    Award compensatory damages to Plaintiff in an amount that will fully, justly, and reasonably compensate Plaintiff for the nature, extent, and duration of the damages caused by

Defendant's discriminatory conduct and actions pursuant to Title VII;

D.    Award Plaintiff all other damages available under Title VII, including, but not limited to, the damages set forth above and other economic losses proximately caused and allowable under Title VII, according to proof;

E.    Award Plaintiff pre- and post-judgment interest calculated at the prevailing rate, as provided by law;

F.    Award Plaintiff her attorneys' fees, reasonable expert witness fees, and the costs of this action; and

G.    Grant such other and further relief as this Court may deem equitable, just, and proper.

## COUNT III
## VIOLATIONS OF TITLE VII OF THE CIVIL RIGHTS ACT
### Retaliation

86.    Plaintiff alleges, realleges, and incorporates by reference all allegations set forth in each of the preceding Paragraphs 1 through 54 of this Complaint as though fully set forth herein.

87.    At all times material herein, Defendant employed Plaintiff and Defendant was an "employer" within the meaning of Title VII.

88.    Moreover, Defendant is a "person" within the meaning of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e(a). Defendant is a "person" within the meaning of 42 U.S.C. § 2000e(a) in that, the definition "includes one or more individuals, governments, governmental agencies, political subdivisions, labor unions, partnerships, associations, corporations, legal representatives, mutual companies, joint-stock companies, trusts, unincorporated organizations, trustees, trustees in cases under title 11, or receivers." 42 U.S.C. § 2000e(a).

89.    Plaintiff engaged in protected activity under Title VII when she filed a formal complaint with Operating Room Manager Jennifer Prinkey on May 14, 2025, regarding Caroline Piekos' discriminatory conduct based on race and sex.

90.    Plaintiff's complaint was made in good faith and was based on her reasonable belief that Caroline Piekos' conduct constituted unlawful discrimination under Title VII.

91.    Defendant was aware of Plaintiff's protected activity as evidenced by Jennifer Prinkey's acknowledgment of the complaint and her writing of statements on a notepad during the meeting.

92.    Following Plaintiff's protected activity on May 14, 2025,

Defendant subjected Plaintiff to adverse employment actions, including the denial of her transfer requests and ultimately her termination on July 29, 2025.

93.    Both of Plaintiff's transfer requests were denied by Department Manager Rebecca Feeley, despite Plaintiff being qualified for available positions, including a General Surgery position.

94.    On July 29, 2025, Plaintiff was terminated by Rebecca Feeley and Jennifer Prinkey under false allegations of "sleeping on the job" for 4-5 hours in an empty operating room when no surgeries were scheduled.

95.    Plaintiff's termination was pretextual, as evidenced by Defendant's refusal to provide any evidence supporting the allegations despite Plaintiff's requests for proof.

96.    The temporal proximity between Plaintiff's protected activity on May 14, 2025, and her termination on July 29, 2025 (approximately 76 days), supports an inference of retaliatory motive.

97.    Defendant's retaliatory motive is further demonstrated by the fact that Caroline Piekos, the subject of Plaintiff's discrimination complaint, was photographed sleeping on the job during an active open heart surgery with patient alarms sounding on August 6, 2025, yet remains employed and

has not been disciplined.

98.    Similarly situated employees who have not engaged in protected activity have been treated more favorably than Plaintiff, as evidenced by the continued employment of Caroline Piekos and other non-Black colleagues who frequently sleep on the job without facing disciplinary action.

99.    Defendant violated Title VII by subjecting Plaintiff to retaliation for engaging in protected activity under the statute.

100.    The conduct of Defendant, by and through its employees, supervisors, managers, and agents, and Defendant's retaliatory actions against Plaintiff for engaging in protected activity, deprived her of statutory rights under Title VII.

101.    As a direct, proximate and foreseeable result of Defendant's aforementioned retaliatory actions and violations of Title VII, Plaintiff has suffered, continues to suffer, and will suffer the following: (a) lost wages and benefits, past and future; (b) lost earning capacity; (c) noneconomic damages, including, but not limited to, pain and suffering, mental anguish, emotional distress, humiliation, loss of dignity, loss of the capacity for the enjoyment of life, irreparable damages to her family and relationships, and other nonpecuniary losses and intangible injuries; and (d) medical expenses

related to her diagnosed Bipolar disorder type 1, severe anxiety, and uncontrolled blood pressure.

WHEREFORE, the Plaintiff, ASHLEY CARTER, requests trial by jury of all issues so triable as of right, demands judgment against the Defendant, SARASOTA MEMORIAL HOSPITAL, and in favor of Plaintiff, and respectfully requests that this Court grant the following relief:

A.   Grant judgment in favor of Plaintiff and declare that Defendant has violated Title VII of the Civil Rights Act, as amended, and its implementing Regulations, by retaliating against Plaintiff for engaging in protected activity;

B.   Award sufficient remedial relief to make Plaintiff whole for the individual loss that she has suffered because of the retaliation to which Defendant subjected her, including, but not limited to, front pay in lieu of reinstatement, full backpay with interest, and any other appropriate nondiscriminatory measures to overcome the effects of the retaliation she has endured;

C.   Award compensatory damages to Plaintiff in an amount that will fully, justly, and reasonably compensate Plaintiff for the nature, extent, and duration of the damages caused by

Defendant's retaliatory conduct and actions pursuant to Title VII;

D.      Award Plaintiff all other damages available under Title VII, including, but not limited to, the damages set forth above and other economic losses proximately caused and allowable under Title VII, according to proof;

E.      Award Plaintiff pre- and post-judgment interest calculated at the prevailing rate, as provided by law;

F.      Award Plaintiff her attorneys' fees, reasonable expert witness fees, and the costs of this action; and

G.      Grant such other and further relief as this Court may deem equitable, just, and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff respectfully requests a trial by jury.

Date this 25th day of February 2026.

*/s/ Jason W. Imler, Esq*
Jason W. Imler
Florida Bar No. 1004422
Alberto "Tito" Gonzalez
Florida Bar No. 1037033
**Imler Law**
23110 State Road 54, Unit 407

Lutz, Florida 33549
(P): 813-553-7709
Jason@ImlerLaw.com
Tito@ImlerLaw.com
Ashley@ImlerLaw.com
Tiffany@ImlerLaw.com